May it please the Court, Mr. Barfield was convicted of possessing with intent to distribute at least 5 grams of methamphetamine. The offense itself involved a little over 30 grams. That was consistent with a sale to a confidential informant and the search of his vehicle on a separate occasion. The district court sentenced him to 30 years in prison, enhancing his sentence by 20 years because of an attribution of over 12 kilograms of methamphetamine to Mr. Barfield. That was clear error and the facts on this record do not make that calculation plausible. That calculation is derived from a statement in the PSR. While the PSR attributed it to an admission by Mr. Barfield that he purportedly said, I'm responsible for 1 pound of meth per week for 27 weeks, we don't know the source that the probation officer relied on. What that source is, is what would determine the adequate evidentiary basis for the district court to allow that. I thought the defendant had made those statements when first confronted, but his explanation was that he wanted to impress the officers. He thought if I could impress the officers with my knowledge that I was a much larger scheme, that I would put myself in a position to bargain for my own participation. Is that in the record established? Is that the defendant's position? No. That's what his trial counsel argued, and I can't speak to the strategy there. What's the source of that information? We don't know either. I'm sorry, you said his trial counsel had a strategy of saying the source was himself. The trial counsel's strategy was to say—overall, the trial counsel's strategy was to say this calculation in the PSR is not reliable. He then makes the argument that it must have been puffery, but I can't place where that comes from. What I do know based on this record— It comes from the defense counsel. It comes from the defense counsel. At the least we know that. And sometimes it's the case that the defendant does a better job of advocating for himself than the defense counsel, and we do have— The defense counsel's strategy was the statement came from the defendant. Yes. The defendant's statement to the court is I've never seen this amount of dope. I don't have— But that's later when he's being sentenced. Correct. But he's not denying that he earlier tried to convince the officers that he had this level of transactions, that he had a lot more knowledge than he had. I think the defendant's statement can be considered as a denial. He's saying I've never seen 12 kilograms of— I understand that. I agree with that. I'm just saying that he's stating that at a later point in time. Correct. But I think we need to step back. I understand the standard is low, that a district court can rely on statements in the PSR. But I think the problem with this statement in the PSR is we don't know the source the probation officer relies on. I thought the whole point below was the defendant said, yeah, I said that, but I was only trying to impress people, or I was high at the time. These two theories seem directly inconsistent. Ultimately, the defense counsel objected to the relevant conduct. Because the statement in the PSR— Could you just answer my question? These two theories is a factual matter. Forget the legal implications. I never said it. Or, yeah, I said it because I was either high or trying to somehow impress the agent or enter into some sort of plea bargain. These two things can't both be true. Can they? No, they're both argument. And I think that's part of the problem with this record, is that we don't know. And absent a source, it's certainly—the PSR does not present a verbatim statement. There's no evidence that there's a verbatim reported statement. This would be a different case if that were true. So it's argument. And the problem that we have, and why we're sort of swirling with argument, is that the government didn't have to present evidence to support this calculation. We also have a bigger record, which makes that 12 kilograms implausible. This is an offense that involves a fraction of one pound. It's from two separate transactions. We know the traffic stop happens November 17th. We only know the sale to the confidential informant happened some previous time. We don't know if that even happened the same week or a different week. They were different weeks, sometime in the month of November. That waters down that calculation even further. We've got facts in the PSR that Mr. Barfield has zero assets. The majority of the cash found on him was from the confidential informant. We also know he's a daily user. He has a drug problem. Chances are he's selling small amounts to support that habit. All of these facts on the record do not make a calculation of over 12 kilograms plausible. For that extrapolation to support a 20-year enhancement of the sentence, it would be nice if we could point to the source and what the probation officer relied on to attribute this statement to Mr. Barfield. We don't know if he simply talked to the cops. We don't know if the probation officer was conferring with the police. We don't know if the probation officer was simply talking to the prosecutor. We have the citation in the government's response brief that points us to the Rule 11 hearing, but that was a disputed proffer by the prosecution, and that cannot serve as an evidentiary basis for restating that assertion in the PSR in order to enhance someone by 20 years. So while I disagree with trial counsel's strategy and I really can't speak to— What was the notice made to the district court? I'm sorry, could you repeat that? What was the notice and the objection made to the district court? I would say that there are two. There's the objection to the statements being included in the factual basis, so going into sentencing. The government certainly knew that was a disputed issue. And then once the PSR came out, defense counsel raised written objections to the relevant conduct calculation and then re-raised them at sentencing. Specifically, what did the defense counsel object to in regard to the quantity? This issue we're talking about, the quantity of drugs that the defendant is alleged to have assertively said that he had been transacting with. He objected to the reliability. He chose to argue that by saying it couldn't have been reliable because my client was high. What I'm saying, he said they're not reliable, but it sounds like the predicate of that objection is that he made the statement. That's my concern. I think that's what defense counsel did. And again, I think it depends on whether or not we look at whether there was an adequate basis for this statement to begin with. If there wasn't— Is this invited error? I can't speak to that. He may have a colorable claim for IAC down the road, but I'm stuck with what the record is now. You may have some collateral attack, effective assistance of counsel, but it's difficult to conclude that there wasn't a basis for the district judge to act when the defense counsel is making that argument. Now, it turns out later the defense counsel made a fundamental mistake, et cetera, et cetera, et cetera. The relief from that is not insufficiency of the evidence. It's something else. He's got to find—he's got to proceed collaterally and make that argument. I think the difficult thing about defense counsel's position is that he was in a position of proving the negative, and that's because we don't know the source. If we—if there was an adequate basis that the probation officer could explain, this is what defendants said because there was a recorded assertion or something that we see in other cases. Well, what I'm suggesting to you is that the defense counsel noticed that sentencing to the district judge is predicated on the fact that such statements were made and said not that they don't exist, but that we should allow them for that reason. The very objection made rests on the circumstance that they're there. So either the—so you rely upon the effectiveness to preserve the error. It's not plain error, but that's not—the objection itself is confounded. Well, it depends on the chronological procedure. Without the absence of an evidentiary basis, just objecting should have put the burden on the government to produce the evidence. If it doesn't— It's not when the defense counsel says that the statements were made, and his argument is that they're not reliable and that he offers a reason for it. I think—I mean, the problem is we could be both incorrect or correct. The problem is we don't know the source. What is the adequate evidentiary basis? I understand your argument. So, I mean, really, without that, we are swirling, and we are swirling because the government didn't have to put on evidence and prove by a preponderance that one pound of meth per week for 27 weeks is actually what Mr. Barfield said, if he said anything. It could be that he did. It could be there could be relevant conduct, but I don't know that either. And I think that's the problem with this extrapolation is we don't know, and we don't know, and it's still enhanced the sentence by 20 years. And I think that's a problem. The court knew how to do the right procedure. There was another dispute with his offense level in the same sentencing hearing. He lost acceptance. Defense counsel objected, gave no reason, but the government knew that it had to produce the evidence to rely on that three-level adjustment. The government should have put on evidence that was going to adjust his sentence, his base offense, by 12 levels. Without that evidence, compared to the facts on this record, it makes over 12 kilos of meth implausible as relevant conduct for this sentence. I'm happy to get back my time. Thank you. There's no question in this case that Barfield never claimed that he did not make the one pound per week statement. There's only two places in the record you need to look. It's his objections on 219 to 221 and his argument to the court, which is an adoption of an argument he made in another case. It's 96 to 99. His objection, Judge Higginbotham, his actual objection is the defendant's post-detention statement was made, the detention statement was made, out of fear and desire to talk himself out of being arrested. He was high on methamphetamine. He was telling the agents anything possible to be released. And so the basis of his objection is that the only evidence relied upon is his own statement. And there's some confusion, Judge Higginbotham. The prior Casey Jones case was a case in which he was trying to talk himself out of being released, and he actually did get released. He offered to serve up his supplier. So this case is even – is much weaker than that case because there's nothing in the record substantiating any motivation that I'm going to inflate my conduct in order to cooperate. There's no indication of cooperation. And so – These are statements from – excuse me. These are statements from defense counsel that you're referring to. I'm referring – what I just referred to was his objections made to the pre-sentence report and also his argument at the – By counsel. By counsel at the sentencing. Obviously, I get that we impute the counsel's statements to the defendant. I'm just curious, though. Do we have any statements from the defendant? No, none. Only the statement from counsel that he was – he made the statements because he was afraid. So – In the normal plea process, the district judge is going to be asking counsel if he has reviewed the PSR, et cetera, et cetera, with him, and you had that interrogation. Did he directly interrogate the defendant? He did, yes. The standard – Judge Counsel did the standard of have you looked at the PSR and have you discussed it with your counsel. But he didn't talk directly to the defendant. He did say that on the record to the defendant. I'm sorry. Yes, he did. Thank you. And Barfield here was – that's the important point. He was in the unique position if he wanted to refute his own statement that he – as to his motivation or that it was a motive or that it was an overstatement or that it was an incentive to confess. So it was his burden to show that the confession was materially untrue, inaccurate, or unreliable. An objection, a conclusion, contention, an argument, that's not competent rebuttal evidence. And the statement is made by counsel that the details of the confession come exclusively from the prosecutor at rearrangement. There are other – there's another source of the record supporting that finding. There's a sworn affidavit on pages eight and nine of the record of the police officer, Midland Officer Dolan, and that sets forth a lot more of the facts surrounding the confession. That he received Miranda warnings, who the interrogating officer was. That would have been a much more likely source for the probation officer's recitation of the confession. Generally as to plausibility, he's a known methamphetamine dealer. He's been targeted by the police. It's not somebody that he randomly came across. There's a purchase. He had digital scales, needles, bags. The confession itself has indicia of reliability. It's not made upon his arrest. It's made at the Midland police station after he has time to think about it, after he has Miranda warnings. He's a criminal history category six. He has a lifetime of experience in having counsel and knowing his rights. It was a statement by the defendant himself. It's not a statement by co-defendants with a motivation to shift liability. He's in the best position to know how much he distributed. It had the reliability of a statement against interest. But also it's never been disavowed. It's a statement against interest that hasn't been disavowed. At least until today. The actual statement that I distribute him one pound a week has never been disavowed. It's puffering. To be clear, it's being disavowed now, I think. So it's being disavowed on appeal. No, I understand. It's being disavowed on appeal, but I think your point is it's never been disavowed at any time in a district court proceeding. Exactly. I understand that. Exactly, Judge. And there's just two spots to look at that, 96 to 99 and 219 to 221. As to the logistics of the sale, a pound is 453 grams. He made a sale of 13 grams. So that would be about five sales a day of that. And if he distributed all the mountain in his car, all 36 grams, that would be about two sales a day. The sales were part of the same course of conduct. The relevant conduct of the sale of the offensive convention is part of the same course of conduct as the relevant conduct. It was identical. It wasn't an isolated, unrelated event. It took place every week, and there's really no time interval. He's selling the pound that he obtained that week. And then finally there's cases that are – I think the two cases that I cited were pretty interesting. In Barnes, they argued that you can't use his own uncorroborated statement as the sole basis for relevant conduct. And the court said that it could. That was a 13-level increase in that case. That was five times the low end of the guideline. And Humphrey is a case a lot like our case. They seized a certain amount of cocaine from his car, and then he says, well, in the last two years, I've been distributing at least a quarter of a kilogram every week for the last two years before I was arrested. And that was a 13-level increase here. The increase is about if you solely sentenced him for just what he possessed and not any relevant conduct whatsoever, it's about three times the low end of his guideline and about two times the high end of his guideline. It's not an extraordinary case based on other cases. And the court plausibly determined that he wasn't a one-time drug seller and the relevant conduct calculation wasn't clearly erroneous. Are there no other questions? Opposing counsel referenced the Casey Jones sentencing that Mr. Garfield's counsel incorporated into. That was a vibrant argument between defense counsel and the prosecution. And what we know from defense counsel is that the statement in Jones was verbatim. That's record site 280. We also know from the prosecutor that that verbatim statement was recorded. That's record site 293. So Jones is a vastly different case because they're arguing over a recorded verbatim statement. The opposing counsel mentions the affidavit on pages eight and nine of the record. What that still says by the officer preparing it, not only was the officer not part of the interview post-arrest, he says, this is what I learned from other police officers. This is a nonverbatim synopsis. We still don't know exactly what Mr. Garfield said. And to attribute to him one pound per week for 27 weeks, the question really becomes, what is an adequate evidentiary basis for this court, for a court to rely on such a bold equation in a PSR? While Mr. Garfield does have a criminal history, the only prior drug offense is for mere possession, for possessing less than one gram of methamphetamine. In Barnes, there's a vibrant discussion from the plea hearing where the defendant is agreeing to his conduct, when an FBI agent testifies about the various transactions, Barnes says, yes, that's true, Your Honor. So we have actual evidence there to support the relevant conduct. Really, this comes down to whether the statement in the PSR had an adequate evidentiary basis. And the PSR does not describe its source. It was not evidence that was presented to the court by the government. It was left to mere argument. And as a consequence, Mr. Garfield was significantly enhanced. I know that it's not the same as a written objection from an attorney, but we do have Mr. Garfield's own words. I've never seen that amount of dope. I don't have the bank accounts. I didn't have large amounts of money to even sum that up. If the statement in the PSR is taken as true, shifting the burden to the defendant, what is the evidence sufficient to rebut that? It would be the defendant saying, no, I didn't say that. No, I've never had that much dope. His attorney may not have put him on, but he told the court himself, this is not right. I shouldn't be responsible for this over 12 kilograms of methamphetamine. I think if the court— Is he saying he's never seen all that at one time or that he's never seen that cumulatively? I take your point, but I'm just kind of curious how best to interpret that language. I think he's saying he's never seen over 12 kilograms of meth. I think he goes on to say— At one time. Why shouldn't we do that? I've never seen that all in one place. But, of course, his confession didn't say all in one place. It was a little bit a week. I think him going on to say I don't have the bank accounts, I don't have the money for that. If he's selling one pound per week for 27 weeks, based on what the confidential informant sold, that equals to over $450,000. It's over $16,000 a week. Most of the money Mr. Barfield had upon arrest was from the confidential informant. He simply doesn't have the money. That just means he didn't say that. I think you've noted he's a drug addict himself. Then I think the real question is use relevant conduct. I don't think it meets the standards, but we also don't have the evidence to line up to the legal standards set forth for relevant conduct. I think the record as a whole makes Mr. Barfield's responsibility for over 12 kilograms implausible, so we ask that the sentence be vacated. Thank you.